UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------------X
                               :

MICHAEL ASHBY,                      :

                         Petitioner        :            No. 19-CV-748

                                 :

        -v-                     :          Petition for Writ of

                                 :          <u>Habeas Corpus</u>

LENNARD JOHNSON, UNITED STATES PAROLE   :
COMMISSION, CHARLES MASSARONE, and   :
PATRICIA K. CUSHWA,              :

                         :

                  Respondents.     :

                         :
------------------------------------------------------------------------X

      In this case, petitioner Michael Ashby challenges the United States Parole Commission's

("Parole Commission" or "Commission") authority to arrest him on a warrant issued over two

weeks *after* Mr. Ashby's supervised release terminated.   By statute and regulation, the

Commission may only exercise such expansive authority — claiming jurisdiction over a person

after their term of supervised release expires — when the Commission makes a finding that a

releasee is an "absconder."[1]  But the Parole Commission did not do so here: the record before the

Parole Commission lacks any finding at all that Mr. Ashby was an absconder.  Nor could the Parole

Commission make such a finding, because all of the available evidence demonstrates that Mr.

---

[1]      The Parole Commission has jurisdiction over an offender serving a term of supervised
release imposed by the Superior Court.  *See* D.C. Code § 24-403.01(b)(6) ("Offenders on
supervised release shall be subject to the authority of the United States Parole Commission until
completion of the term of supervised release.").  "Supervised release is considered the functional
equivalent of parole," *Taylor v. U.S. Parole Comm'n*, 860 F. Supp. 2d 13, 15, n.3 (D.D.C. 2012),
and thus, "the law pertaining to the revocation of parole is applicable to the revocation of
supervised release," *Anderson v. U.S. Parole Comm'n*, No. 10-CV-1451 (RMC), 2010 WL
5185832, at *2 (D.D.C. Dec. 22, 2010).  For that reason, while some of the statutes and regulations
at issue in this case use the terms "parolee" and "releasee," for purposes of this petition, the two
terms are equivalent.  Because Mr. Ashby was on supervised release prior to the actions challenged
in this petition, this petition will refer to him as a "releasee."

Ashby had not absconded from supervision.  Compounding these errors, the Commission offered

no due process to Mr. Ashby to challenge the Commission's seeming determination that he was

an absconder.  Mr. Ashby's current incarceration is illegal.  Because his continued detention

violates "the constitution and the laws of the United States," Mr. Ashby asks this Court to grant

his petition for the writ of *habeas corpus* pursuant to 28 U.S.C. Section 2241, to order his release

from jail and to terminate his supervision.

Michael Ashby's term of supervised release ran from February 5, 2016 to February 4, 2019.

About a month before his term of supervision expired, Mr. Ashby began experiencing emotional

difficulty relating to the death of his daughter, who had recently died suddenly in a car accident.

According to his community supervision officer ("CSO"), Mr. Ashby was a "loss of contact" for

eight days between January 15, 2019 — when the CSO met and spoke with Mr. Ashby at his home

address — and January 23, 2019 — when the CSO could not find Mr. Ashby at his home.

Although the CSO claims that Mr. Ashby was not at home, the CSO also reports that Mr. Ashby

contacted him by phone on January 23, 2019, and explained that he had not been at home that day

because he was grieving for his deceased daughter.  On the basis of this record, the Parole

Commission apparently, and erroneously, concluded that Mr. Ashby had intentionally evaded

supervision and issued a warrant for his arrest.

The Parole Commission's actions were unlawful for at least three reasons.  *First*, the

Commission exceeded the scope of its statutory and regulatory authority in issuing the warrant

challenged here.  By statute, the Parole Commission can only exercise jurisdiction over a releasee

after the term of his supervision expires if the releasee is "found to have intentionally refused or

failed to respond" during the term of their supervision.  18 U.S.C. § 4210(c).  If the Commission

makes such a finding, the Commission may issue a warrant only if the releasee is an "absconder

from supervision."  28 C.F.R. § 2.211(d).  The Parole Commission exceeded the limits of this statutory and regulatory authority.  The Commission made no finding that Mr. Ashby intentionally refused or failed to respond to supervision.  The Commission did not find that Mr. Ashby was an absconder from supervision.  In issuing and executing the warrant for Mr. Ashby's arrest, the Commission exceeded its delegated authority.

*Second*, the Commission violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*.  The Commission acted arbitrarily and capriciously when it failed to engage in reasoned decisionmaking.  The Commission had before it evidence that Mr. Ashby affirmatively sought out his CSO, but that the CSO was unreachable.  The record before the Commission also revealed that Mr. Ashby's alleged absences from his home were not due to his intentional evasion of supervision — as Commission guidelines require for Mr. Ashby to be deemed an "absconder from supervision" — but were due instead to his grieving the death of his daughter.  Nevertheless, the Parole Commission ignored this evidence in concluding, as it must have in order to exercise its jurisdiction, that Mr. Ashby had absconded.

*Third*, the Commission violated Mr. Ashby's Fifth Amendment due process rights by affording him no process at all to challenge the Commission's determination that he was an absconder.  Instead, the Commission unilaterally decided, based only on an Alleged Violation Report ("AVR") written by his CSO, that Mr. Ashby had absconded from supervision and that the Commission therefore had jurisdiction over Mr. Ashby.  Mr. Ashby did not receive his constitutionally guaranteed process to challenge the Commission's unsupported determination that he had absconded from supervision.  This effort by an agency to expand its own jurisdiction and authority should not go unchecked.

## JURISDCTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 2241, because Mr. Ashby's term in federal custody violates the Constitution and the laws of the United States, and pursuant to 28 U.S.C. Section 1331, because this action arises out of the Constitution and laws of the United States.  Venue in the District of Columbia is proper because Mr. Ashby is currently held in custody at the Central Detention Facility in Washington, D.C.  *See* 28 U.S.C. § 2241(d); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004); *Owens v. Gaines*, 219 F. Supp. 2d 94, 98 (D.D.C. 2002) ("The proper court in which to challenge the supervision of the U.S. Parole Commission is this Court.").

## PARTIES

Petitioner Michael Ashby is currently incarcerated the Central Detention Facility in Washington, D.C.

Respondent Lennard Johnson is the Warden of the Central Detention Facility in Washington, D.C., and is the current actual custodian of Mr. Ashby.

Respondent United States Parole Commission is an "independent agency in the Department of Justice," 18 U.S.C. § 4202, and exercises "legal custody" and "control" over Mr. Ashby "until the expiration of the maximum terms for which [Mr. Ashby] was sentenced," *id.* § 4210.

Respondent Charles Massarone is a Commissioner of the United States Parole Commission.  Commissioner Massarone signed the warrant for Mr. Ashby's arrest.  He is named in his official capacity.

Respondent Patricia K. Cushwa is the current interim chair of the United States Parole Commission.  She is named in her official capacity.

## STATEMENT OF FACTS

On August 27, 2014, Mr. Ashby was sentenced to serve 24 months imprisonment, followed by a three-year term of supervised release, for unlawful possession of a firearm (prior conviction). Alleged Violation(s) Report ("Exhibit A"), at 2.  Mr. Ashby began serving his term of supervised release on February 5, 2016, Warrant ("Exhibit B"), and the term was to last until February 4, 2019, Warrant Application ("Exhibit C"), at 1.  On January 28, 2019, Mr. Ashby's CSO filed an AVR with the Parole Commission, alleging that Mr. Ashby "is considered a loss of contact, at this juncture."  Exhibit A, at 4.  The CSO reports that he attempted two unannounced visits to Mr. Ashby's place of residence on January 9, 2019, and January 11, 2019, but that "access could not be gained into the building" at those times.  Exhibit A, at 3.

On January 15, 2019, the CSO alleges that he made contact with Mr. Ashby both by phone and in person at his place of residence.  Exhibit A, at 3.  The CSO claims that he instructed Mr. Ashby to report to a Reentry Sanction Center on the following morning, but that Mr. Ashby did not report for that program.  *Id.*  On January 23, 2019, the CSO reported that he attempted another unannounced home visit, but Mr. Ashby was not at his home at that time.  *Id.*  That same day, the record shows that Mr. Ashby called his CSO and left a voicemail message acknowledging receipt of the letter.  *Id.*  The record does not report any further efforts by the CSO or the Parole Commission to contact Mr. Ashby.  Based on these interactions, and Mr. Ashby's alleged failure to "address[] his substance abuse issues," on January 28, 2019, the CSO requested the issuance of a warrant.  *Id.* at 4.  The warrant request was endorsed by a supervisory CSO on January 29, 2019. *Id.*  On February 4, 2019, Mr. Ashby's term of supervised release expired.  Exhibit C, at 3.

On February 21, 2019 — seventeen days after Mr. Ashby's supervised release terminated — based on "reliable information" that Mr. Ashby had "violated one or more conditions of his

release," a commissioner of the Parole Commission signed a warrant for Mr. Ashby.  Exhibit B. The United States Marshals Service received the warrant a day later and executed it by arresting Mr. Ashby on March 1, 2019.  Exhibit C, at 4.  Mr. Ashby was, and is, incarcerated at the Central Detention Facility, in Washington, D.C.

On March 5, 2019, Mr. Ashby appeared with counsel at a probable cause hearing before a hearing examiner of the Parole Commission.  Prior to that hearing, counsel challenged the authority of the Commission to issue a warrant for Mr. Ashby, and the Commission informed counsel that it had such authority because Mr. Ashby was an absconder.  Counsel also challenged the Parole Commission's authority to issue a warrant for Mr. Ashby at the March 5th hearing, but the examiner simply reiterated the Commission's position as previously stated.

## ARGUMENT

The Court should grant Mr. Ashby's petition for three independent reasons.  *First*, the Parole Commission lacked the authority to issue a warrant for Mr. Ashby's arrest.  The Commission's warrant runs counter to every check on the agency's authority: the Commission's statutory authorization, regulations, and its own internal guidelines.  *Second*, the Commission violated the APA by acting arbitrarily and capriciously in classifying Mr. Ashby as an "absconder."  The Commission either misconstrued the evidence before it, or simply ignored evidence that Mr. Ashby was actively seeking to be supervised.  *Third*, the Commission denied Mr. Ashby due process by offering him no forum in which he could challenge his erroneous classification as an absconder.

A.  The Parole Commission Lacked Authority to Issue a Warrant for Mr. Ashby's Arrest.

Like all administrative agencies, the jurisdiction of the Parole Commission is limited by statute.  As a general matter, Congress has limited the "jurisdiction of the Commission over the

parolee" such that jurisdiction terminates after "the expiration of the maximum term or terms for which he was sentenced." 18 U.S.C. § 4210(a).[2] But there is a relevant exception: "In the case of any parolee found to have intentionally refused or failed to respond to any reasonable request, order, summons, or warrant of the Commission . . ., the jurisdiction of the Commission may be extended for the period during which the parolee so refused or failed to respond." *Id.* § 4210(c); *see also Barrier v. Beaver*, 712 F.2d 231, 236 (6th Cir. 1983) ("[W]here . . . a parolee has absconded from supervision, the Parole Commission's authority over the absent parolee is extended beyond the original date of termination of supervision."). This statutory provision requires the Commission to make the finding that the releasee acted with *intent* in refusing or failing to respond to the Commission. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 68 (1994) (holding that, where a *mens rea* adverb modifies a list of verbs, the "most natural grammatical reading" is that the adverb modifies each verb).

Consistent with that statutory jurisdictional limitation, the Parole Commission's authority to issue warrants is limited "only within the maximum term or terms of the period of supervised release being served by the releasee." 28 C.F.R. § 2.211(d). Here, too, the regulations provide an exception, extending the power of the Commission to issue warrants beyond the period of supervised release "as provided for an absconder from supervision in § 2.204(i)." *Id.* Section 2.204(i) does not exist, but the regulation concerning absconding provides: "If you abscond from supervision, you will stop the running of your supervised release term as of the date of your

---

[2]     "The statute from which the U.S. Parole Commission's authority over parolees derives is 18 U.S.C. § 4210. Despite the effective repeal of that statute in 1984, Congress has consistently extended the time period that the chapter remains in effect," *Owens v. Gaines*, 219 F. Supp. 2d at 99, the latest being in 2018, United States Parole Commission Extension Act of 2018, Pub. L. No. 115-274, 132 Stat. 4160.

absconding and you will prevent the expiration of your supervised release term."   28 C.F.R. § 2.204(e).

"Absconder" is not defined by either statute or regulation.   However, the Parole Commission's "Rules and Procedures" manual supplies a definition: "The term 'absconding' describes not only the parolee who intentionally leaves the district of supervision without permission, but also one who intentionally conceals himself from active supervision within the district."  U.S. Parole Comm'n, Rules and Procedures ("Exhibit D"), 144 (2010).

The Parole Commission lacked authority to issue the warrant here for two separate, but related, reasons.  *First*, because the Parole Commission did not make a finding that Mr. Ashby "*intentionally* refused or failed to respond," as required by statute, the Commission lacked jurisdiction over Mr. Ashby.  This required finding is a prerequisite to the Commission's exercise of jurisdiction; the Commission cannot expand its own jurisdiction without first making that finding.  *Second*, the Parole Commission acted unlawfully in issuing the warrant for Mr. Ashby because Mr. Ashby did not abscond from supervision.  Mr. Ashby did not "intentionally conceal[] himself from active supervision," as necessitated by the Commission's own regulations.

1.   The Parole Commission failed to make the required statutory finding as a prerequisite to exercising jurisdiction over Mr. Ashby.

In order to exercise jurisdiction over a person whose term of supervision has expired, the Parole Commission must first make a finding that the person intentionally refused or failed to respond to supervision.  The language of the Parole Commission's authorizing statute makes this clear: The Commission can only exercise jurisdiction *after* a period of supervised release concludes if a releasee is first "*found* to have intentionally refused or failed to respond" to

supervision.  18 U.S.C. § 4210(c) (emphasis added).[3]  The Commission did not do so, and thus cannot claim jurisdiction over Mr. Ashby.

It is a bedrock principle of administrative law that the "authority of administrative agencies is constrained by the language of the statute they administer." *Texas v. United States*, 497 F.3d 491, 500-01 (5th Cir. 2007).  This principle is "of particular importance where . . . an agency is attempting to expand the scope of its jurisdiction." *Brown & Williamson Tobacco Corp. v. Food & Drug Admin.*, 153 F.3d 155, 161 (4th Cir. 1998), *aff'd*, 529 U.S. 120 (2000).  As the Supreme Court has explained, "[a]n agency may not confer power upon itself.  To permit an agency to expand its power in the face of a congressional limitation on its jurisdiction would be to grant the agency power to override Congress." *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 374-75 (1986).

Applying those familiar principles here, it is clear that the Parole Commission is authorized to exercise jurisdiction over a releasee after the releasee's term of supervision expires is limited only when the releasee has "intentionally refused or failed to respond" to any "reasonable request, order, summons, or warrant" of the Commission.  18 U.S.C. § 4210(c).  That is, although the Parole Commission's regulations concerning the issuance of warrants after a term of supervision speak in terms of an "absconder from supervision," 28 C.F.R. § 2.211(d), the Commission is bound by Congress's limitation on its jurisdiction in Section 4210(c).

"When a statute requires an agency to make a finding as a prerequisite to action, it must do so." *Gerber v. Norton*, 294 F.3d 173, 185 (D.C. Cir. 2002).  In a line of cases, the D.C. Circuit

---

[3]     The statutory language in Title 18 of the United States Code uses the term "parolees," *see, e.g.*, 18 U.S.C. 4210(a), while the Parole Commission's regulations, which are "codified in 28 C.F.R. Part 2," *Ramsay v. U.S. Parole Comm'n*, 840 F.3d 853, 855 (D.C. Cir. 2016), use the language "releasees," *see, e.g.*, 28 C.F.R. § 2.211(a).

has explained that an agency cannot take an action where that action is subject to a prerequisite finding that the agency failed to make.  For instance, the statute at issue in *Gerber* authorized the Secretary of the Interior to issue a permit "[i]f the Secretary finds" a particular condition to be met. *Id.* at 184 (quoting 16 U.S.C. § 1539(a)(2)(B)).  The Court found that the Secretary had issued the permit without making the required finding.  *Id.* at 185.  Therefore, the Court concluded that the "issuance of the permit violated the statute."  *Id.* at 186; *see also Susquehanna Int'l Grp., LLP v. Sec. & Exch. Comm'n*, 866 F.3d 442, 446 (D.C. Cir. 2017) (holding that the Securities and Exchange Commission's order was unlawful because the Commission "did not itself 'find[]' or 'determin[e]'" a prerequisite condition, as required by statute (quoting 15 U.S.C. §§ 78q-1(b)(3), 78s(b)(2)(C)(i)).

This case is on all fours with *Gerber*.  The Parole Commission did not make the prerequisite finding necessary to exercise jurisdiction over Mr. Ashby.  The warrant for Mr. Ashby's arrest — issued on February 21, 2019, weeks after Mr. Ashby's supervision expired — makes no mention of Mr. Ashby's intentional refusal or failure to respond to supervision.  *See* Exhibit B.  The warrant merely states that the Commission "has been presented" with "reliable information" that Mr. Ashby had "violated one or more conditions of his release."  *Id.*  But that finding is not at all analogous to the finding required by statute: for one, it is entirely conclusory and thus not a finding at all.  *See Getty v. Federal Savings and Loan Ins. Corp.*, 805 F.2d 1050, 1057 (D.C. Cir. 1986) (holding that a "conclusory recitation" failed to satisfy a statutory requirement that the agency "consider" a specified factor).  For another, finding a violation of a condition of release — which can include testing positive for drugs — is not a finding that a person intentionally refused or failed to respond to the Parole Commission.

Nor did the CSO make the required finding in his AVR, upon which the warrant was issued. In that Report, the CSO alleged that Mr. Ashby "failed to report for scheduled office visits," Exhibit A, at 2, and was "a loss of contact, at this juncture," *id.* at 4.  But the CSO did not make the necessary determination that Mr. Ashby was intentionally refusing or intentionally failing to comply with the terms of his supervision.[4]  The Commission cannot rely on the CSO's AVR to claim jurisdiction over Mr. Ashby.

In fact, the record before the Parole Commission actually points in the *opposite* direction: after a period during which Mr. Ashby was apparently not at his home during unannounced, unscheduled home visits, Mr. Ashby actively sought to comply with supervision.  As the CSO reported in his AVR, on January 23, 2019, "[Mr. Ashby] subsequently left a voice mail message for this officer and appeared to acknowledge receipt" of a letter that the CSO had left for him. Exhibit A, at 4.  An additional report from the CSO acknowledges that, in Mr. Ashby's message of January 23, 2019, he "disclosed he had just visited his daughter's grave site and appeared upset. He acknowledged not being available to 'save his baby.'  Mr. Ashby expressed he wanted to enter [a drug treatment] program and apologized for any issues caused."  Exhibit E.  Importantly, there is no evidence in the record that the CSO or any other agent of the Parole Commission attempted to contact Mr. Ashby after this point.

---

[4]    As with the Parole Commission, the CSO also did not follow his own applicable guidelines. According to those guidelines, the process to determine that a releasee is a "loss of contact" (as Mr. Ashby's CSO did here) begins with "an offender['s] fail[ure] to report for a scheduled office visit."  Exhibit F, at 3.  The CSO is then required to conduct a home visit, telephone the releasee, and send a certified letter to the releasee's home.  *Id.*  Only "[i]f contact cannot be reestablished within seventeen calendar days of the initial missed appointment, the case shall be designated in loss of contact status on the 18th day."  *Id.*  Here, by the CSO's own account, Mr. Ashby "failed to report for a scheduled office visit January 10, 2019," Exhibit A, at 3, starting the seventeen-day clock.  But twice during that time — on January 15, 2019, when "[c]ontact was established" at Mr. Ashby's home, and on January 23, 2019, when Mr. Ashby called his CSO — the CSO was able to reestablish contact with Mr. Ashby.  *Id.*

The record also shows that, at all times during his period of supervision, Mr. Ashby resided at the home address on file with the Parole Commission.  Exhibit A, at 3-4.  When the CSO visited Mr. Ashby at home on January 15, 2019, and made contact with him, it was at that address.  Exhibit A, at 3.  When the CSO left a letter for Mr. Ashby at his residence in the morning of January 23, 2019, Mr. Ashby received it that afternoon at that address.  In other words, the record is devoid of any allegation that Mr. Ashby resided anywhere other than the address on file with the CSO and at which the CSO successfully contacted Mr. Ashby.

This record is relevant for two reasons.  First, it refutes any claim that Mr. Ashby intentionally evaded supervision, because the record shows that Mr. Ashby's reported absences were caused by his distress over the death of his daughter, and not because he was intentionally evading supervision.  It would be curious, to say the least, for Mr. Ashby to be an "absconder" who consistently resided at the only address that he provided, and was on file with, the very agency he allegedly absconded from.  Second, the record shows that, even if Mr. Ashby had been intentionally evading supervision, he stopped doing so on January 23, 2019, when he called his CSO the same day that he received a notice to do so.  Therefore, the Parole Commission could not plausibly claim that Mr. Ashby had been intentionally refusing to respond to supervision.

Because the Parole Commission lacked jurisdiction over Mr. Ashby, its issuance of a warrant for Mr. Ashby exceeded the Commission's Congressional authorization.  *See, e.g.*, *Hunter v. FERC*, 711 F.3d 155, 156 (D.C. Cir. 2013) (holding that, where an agency has no jurisdiction over a regulated party, the agency cannot lawfully act upon that party).

2.   The Parole Commission unlawfully issued a warrant for Mr. Ashby because the Commission failed to comply with its regulations or guidelines.

The Parole Commission's regulations and guidelines specify the limited circumstances under which the Commission can issue a warrant after a term of supervision expires.  Two

regulations are relevant here.  First, the Parole Commission can only issue a warrant after a term of supervision expires if the target of the warrant is "an absconder from supervision."  28 C.F.R. § 2.211(d).  Second, that warrant must be issued "as soon as practicable after the alleged violation is reported to the Commission."  28 C.F.R. § 2.211(c).

The Commission's guidelines — what the Commission refers to as "notes and procedures" — are also relevant.  Those guidelines define an "absconder" as a releasee who "intentionally conceals himself from active supervision."  Exhibit D, at 144.  The guidelines double down on the intent requirement, further explaining that "[i]n all cases of failure to report or submit to supervision, the failure must have been intentional."  *Id.*  They also specify that the "date" at which absconder status begins "should be conclusive and not a date arrived at by guess-work; it must be a specific date mentioned in the documentary evidence available or in the testimony."  *Id.*  The guidelines also make clear that even if a releasee was at one point an "absconder," that status expires upon "[t]he voluntary return of the [releasee]."  *Id.*

First, the Parole Commission failed to comply with its regulations and guidelines concerning when a warrant may be issued after a term of supervised release expires.  The Commission's guidelines, in conjunction with their regulations, limit the authority of the Commission to issue a warrant for a releasee whose term of supervised release has expired only if the releasee intentionally conceals himself from supervision during the term of his supervised release.  28 C.F.R. § 2.211(d); Exhibit D, at 144.  As with the statutory prerequisite to jurisdiction, *see* 18 U.S.C. § 4210(c), the Commission's guidelines and regulations contain an "intent" requirement.

Here again, the Parole Commission failed to meet that requirement.  Far from concluding that Mr. Ashby had absconded by intentionally concealing himself, the Parole Commission simply

stated, in its warrant, that Mr. Ashby had "violated one or more conditions of his release."  Exhibit

B.  And in his AVR, the CSO alleged that Mr. Ashby "failed" to report and did "not ma[k]e himself

available for scheduled visits."  Exhibit A, at 3, 4.  But neither the warrant itself nor the AVR

contain a single finding that Mr. Ashby intended to conceal himself.  As discussed above, the

record only supports the opposite conclusion: that Mr. Ashby *sought out* supervision by calling his

CSO on January 23, 2019.

Even if the Parole Commission had evidence that Mr. Ashby was once an "absconder"

(although it did not, because the Commission lacked any evidence of intent), the record shows that

Mr. Ashby was not an absconder when the warrant issued on February 21, 2019.  The record shows

instead that Mr. Ashby sought out his CSO on January 23, 2019 by calling and leaving a voicemail

explaining why he had been absent the previous week.  Under the Commission's own guidelines,

then, Mr. Ashby "voluntary return[ed]" to supervision and his status as an absconder expired.  The

Commission therefore acted contrary to its regulations when it issued a warrant for Mr. Ashby on

February 21, 2019, because Mr. Ashby was not an absconder at that time.

Second, the Commission violated the regulation requiring it to issue a warrant "as soon as

practicable after the alleged violation is reported to the Commission."  28 C.F.R. § 2.211(c).  Here,

the Parole Commission delayed for weeks, for no apparent reason, in issuing the warrant.  On

January 29, 2019, the Supervisory CSO signed off on the AVR.  On February 21, 2019 — over

three weeks later — the warrant for Mr. Ashby issued.  This delay, for which there is no

explanation in the record, cannot fairly be called "as soon as practicable."  Indeed, in other

contexts, a delay of over three weeks has been deemed not to be "as soon as practicable."  *See,*

*e.g.*, *United States v. Denisio*, 360 F. Supp. 715, 720 (D. Md. 1973) (holding that a "three week[]"

delay was not "as soon as practicable"); 20 C.F.R. § 1002.181 (defining, in the employment

context, "as soon as practicable" as "within two weeks"). By delaying for over three weeks, the Parole Commission failed to issue the warrant as soon as practicable, as required by regulation. Relatedly, the Commission also failed to comply with its guideline requiring that it specify a "conclusive" date upon which absconder status began. Exhibit D, at 144. Despite the clear requirement that the date when the releasee became an absconder "must be a specific date mentioned in the documentary evidence," *id.*, the Parole Commission supplied no date at all. Here again, the Parole Commission flouted its own guidelines.

B. The Parole Commission Violated the Administrative Procedure Act.

The Parole Commission violated the APA in two ways: because it acted arbitrarily and capriciously in issuing a warrant for Mr. Ashby, and because the Commission's factual analysis was not based on substantial evidence. Under the APA, a final agency action should be set aside if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Similarly, when an agency's holding is "based on factual analysis, the court will set it aside only if the holding is unsupported by 'substantial evidence.'" *Beverly Enters., Inc. v. Herman*, 130 F. Supp. 2d 1, 12 (D.D.C. 2000) (citing *Robinson v. Nat'l Transp. Safety Bd.*, 28 F.3d 210, 215 (D.C. Cir. 1994)).

The APA controls the Parole Commission's issuance of warrants. By statute, the Parole Commission is "an 'agency'" for purposes of the APA. 18 U.S.C. § 4218(a). And while certain of the Commission's actions are expressly "committed to agency discretion for purposes of" the APA, neither the issuance of warrants nor the Commission's exercise of its jurisdiction is one of them. *Id.* § 4218(d) (limiting judicial review of the Commission's powers under Section 4203(b)(1-3)); *see also id.* § 4210 (outlining the Commission's jurisdiction); *id.* § 4213 (describing the Commission's powers to issue warrants). And the Commission's issuance of the warrant for

Mr. Ashby was a "final agency action," 5 U.S.C. § 706(2)(A), as it "mark[ed] the consummation of the agency's decisionmaking process" that Mr. Ashby was an absconder, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). That is, the determination challenged in this action — that Mr. Ashby had absconded, and thus, that the Commission had jurisdiction and authority to issue the warrant — became final once the Parole Commission issued its warrant. The issuance of the warrant was also a decision "by which rights or obligations have been determined, or from which legal consequences will flow," *id.*, as Mr. Ashby has been incarcerated on this warrant since March 1, 2019.

The Parole Commission's decision to issue a warrant for Mr. Ashby was arbitrary and capricious, in violation of the APA, for two principle reasons: because the agency's factual decisionmaking was lacking, and because the agency failed to abide by its own regulations and guidelines.

First, agency action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Commission's warrant falls short of both of these requirements. As discussed above, the Commission "entirely failed to consider" Mr. Ashby's voicemail of January 23, 2019, which established that Mr. Ashby was not an absconder. Likewise, the Commission's decision ran "counter to the evidence before the agency," as the only available evidence demonstrated that Mr. Ashby was not intentionally evading supervision, that he continued to reside at the address on file with his CSO, and that he had affirmatively complied with his supervision as of January 23, 2019. For these reasons too, the Parole Commission's

decision was "unsupported by substantial evidence on the record as a whole." *Chippewa Dialysis Servs. v. Leavitt*, 511 F.3d 172, 176 (D.C. Cir. 2007).

Second, agency action is arbitrary and capricious if the agency fails to comply with its own regulations and guidelines. An agency must not only comply with the terms of its authorizing statute, see *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d 360, 381 (D.D.C. 2017), but "[i]t is a fundamental principle of administrative law that an agency is [also] bound to adhere to its own regulations," *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008) (citing *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997)); *see also Steenholdt v. Fed. Aviation Admin.*, 314 F.3d 633, 639 (D.C. Cir. 2003) ("[F]ederal agencies [must] follow their own rules, even gratuitous procedural rules that limit otherwise discretionary actions."). Consequently, "an agency action may be set aside as arbitrary and capricious if the agency fails to comply with its own regulations." *Nat'l Envtl. Dev. Ass'ns Clean Air Project v. Envtl. Prot. Agency*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (internal quotation marks omitted). An agency also acts arbitrarily or capriciously when it fails to follow its own interpretative guidelines. *See Ravulapalli v. Napolitano*, 773 F. Supp. 2d 41, 54 (D.D.C. 2011) (recognizing APA claim where the agency failed to follow its own guidelines); *INS v. Yang*, 519 U.S. 26, 32 (1996) ("Though an agency's discretion is unfettered at the outset, if it announces and follows — by rule or by settled course of adjudication — a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'").

The Parole Commission failed to comply with its regulations and guidelines. As discussed above, the Commission ran afoul of its regulations because Mr. Ashby was not an "absconder" under both the Commission's regulations and guidelines, and because the Commission did not

issue the warrant "as soon as practicable."   By failing to follow these two regulations, the Commission's action was arbitrary and capricious.   The Commission also failed to comply with its established guidelines — the Commission's notes and procedures — by designating Mr. Ashby an absconder without the required evidence of intent and by failing to specify the precise date upon which Mr. Ashby became an absconder.   The Commission's disregard for its regulations and guidelines violates the APA.

C. <u>To The Extent That the Commission Determined That Mr. Ashby Had Absconded, the Commission Violated Mr. Ashby's Due Process Rights.</u>

The procedural failures of the Parole Commission have a constitutional dimension as well. The Constitution guarantees that "some form of hearing is required before an individual is finally deprived" of liberty or property.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).   In the administrative context, "[i]t is a well established principle that procedural due process is required . . . when adjudications of fact are made which operate to deprive a person of a constitutionally protected interest."  *McDonald v. McLucas*, 371 F. Supp. 831, 834 (S.D.N.Y.) (citing *Hannah v. Larche*, 363 U.S. 420 (1960), *Morgan v. United States*, 304 U.S. 1 (1938)), *aff'd*, 419 U.S. 987 (1974).   The Commission's extension of the term of Mr. Ashby's supervised release — beyond the court-imposed three-year term — deprived Mr. Ashby of his liberty.  *See United States v. Woods*, 547 F.3d 515, 519 (5th Cir. 2008) (observing that the standard conditions of supervised release "inherently infringe [on a] defendant's liberty").   The execution of a parole violator warrant is also a loss of liberty that deprives a person of a constitutional interest protected by the strictures of the Fifth Amendment.  *See Moody v. Daggett*, 429 U.S. 78, 87 (1976) ("[E]xecution of the [parole violator] warrant and custody under that warrant [are] the operative event triggering any loss of liberty attendant upon parole revocation."); *see generally Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core

values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often

on others.").

The Parole Commission deprived Mr. Ashby of liberty in two separate ways: by extending

the term of his supervision beyond three years, and by executing a warrant for Mr. Ashby's arrest.

First, the Commission extended the term of his supervised release beyond the three year term to

which he was sentenced.  "[S]upervised release, like parole, is an integral part of the punishment

for the underlying offense."  *United States v. Meeks,* 25 F.3d 1117, 1121 (2d Cir. 1994); *see also*

*United States v. Thompson*, 777 F.3d 368, 373 (7th Cir. 2015) ("[T]he imposition of conditions of

supervised release is part of the sentence . . . .").  "[S]upervised release makes the defendant

vulnerable to increased punishment in a number of situations in which he would not otherwise be

vulnerable."  *Meeks*, 25 F.3d at 1121; *see also Kraus v. United States*, 48 F.3d 1221 (7th Cir.

1995).  For that reason, the standard conditions of supervised release "inherently infringe [on a]

defendant's liberty."  *Woods*, 547 F.3d at 519.  Because supervised release inherently deprives the

releasee of his liberty, the extension of a term of supervised release requires due process. *See,*

*e.g.*, *Zielinski v. DeFreest*, No. 12-CV-1160 (JPO), 2013 WL 4838833, at *6 (S.D.N.Y. Sept. 10,

2013) (finding a "procedural due process violation" where "additional terms of supervised release

were imposed upon [the releasee] . . . without the proper procedure of a modification hearing").

The Parole Commission deprived Mr. Ashby of his liberty when it extended the term of

Mr. Ashby's supervised release beyond the three years to which he was sentenced.  By designating

Mr. Ashby as an "absconder," the Parole Commission indefinitely extending the period of his

supervised release.  Under the Parole Commission's regulations, when a releasee is designated by

the Commission to be an "absconder," the term of his supervised release *extends indefinitely*, far

beyond the judicially-imposed period of supervision.  *See* 28 C.F.R. § 2.204(e).  During this time,

the releasee can be reincarcerated for any "violation of a release condition," including violations that occurred during the extended period of supervised release imposed solely due to the Parole Commission's designation. *Id.*

This expansive power is available to the Parole Commission based solely on the finding that a releasee is an "absconder." Once the Commission makes such a finding, it triggers an indefinite deprivation of liberty. The breadth and depth of that deprivation must be accompanied by a process through which a releasee can challenge the Commission's designation. *See Mathews*, 424 U.S. at 341 (assessing the "degree of potential deprivation that may be created by a particular decision" in considering how much process is due).

Second, the Commission deprived Mr. Ashby of his liberty when it executed the warrant for his arrest. The Supreme Court has squarely held that the "execution of [a parole violator] warrant" is a loss of liberty that requires due process. *Moody*, 429 U.S. at 87. The Commission can only exercise this power after a term of supervised release expires if it finds that the releasee is an absconder. 18 U.S.C. § 4210(c). By finding that Mr. Ashby was an absconder, the Parole Commission enabled itself to issue, and subsequently execute, the warrant for Mr. Ashby's arrest. Thus, this "adjudication[] of fact" undeniably "operate[d] to deprive" Mr. Ashby his "constitutionally protected interest." *McDonald*, 371 F. Supp. at 834; *see also PDK Labs Inc. v. Reno*, 134 F. Supp. 2d 24, 33 (D.D.C. 2001) (finding a due process violation where government action resulted in a "tangible change in status" without process to challenge that action).

The Commission offered no process to Mr. Ashby before it determined that Mr. Ashby was an absconder and deprived Mr. Ashby his liberty in the manners described above. It is difficult to know whether the Commission decided at all that Mr. Ashby was an absconder, given that there are no such findings in the record. But the Commission must have done so, because it could not

have extended the term of Mr. Ashby's supervised release or executed the warrant for Mr. Ashby otherwise.  *See* 18 U.S.C. § 4210(c); 28 C.F.R. § 2.211(d).  To the extent that the Commission made such a determination, it did so unilaterally, based on the CSO's AVR.  No matter how the Commission arrived at its determination, it offered Mr. Ashby no notice and no process prior to extending the term of his supervised release, and prior to issuing and executing the warrant, for Mr. Ashby to respond to the Commission's allegations.

While the Commission does provide a "probable cause hearing" to "determine whether there is probable cause to believe that the releasee has violated the conditions of supervised release as charged," 28 C.F.R. § 2.214(d), that hearing does not satisfy the constitutional guarantee of due process.  For one, the probable cause hearing does not provide a forum for Mr. Ashby to raise the claim here: that he was not an absconder subject to the expanded jurisdiction of the Parole Commission.  The Commission itself does not understand the probable cause hearing to be such a forum, as the hearing examiner in this case did not make a finding that Mr. Ashby was an absconder.  And, in any event, the probable cause hearing only serves to determine whether Mr. Ashby had "violated the conditions of supervised release," *id.*, which is a question (and process) different than the one challenged here.   Mr. Ashby received no process to challenge the Commission's determination that he was an *absconder* — the determination enabling the Commission to extend its jurisdiction over Mr. Ashby — prior to the execution of the warrant.

The probable cause hearing is also insufficient process because it takes place after the deprivation of liberty — the execution of the warrant — occurs.  "A 'root requirement' of due process is that an individual have an opportunity to be heard '*before* he is deprived of any significant [liberty or] property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Arriva*

*Med. LLC v. United States Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 285 (D.D.C. 2017) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis added)).  Here, Mr. Ashby received no process — no notice that he had been designated an "absconder" or opportunity to challenge that designation, *see Mathews*, 424 U.S. at 348 — prior to the deprivation of his liberty.  To deny a person process to challenge his status as an absconder is to permit the Parole Commission to execute arrest warrants for any former releasee, years after their term of supervision expired, based only on a bare (and evidently unchallengeable) assertion that the person was an absconder.

Because Mr. Ashby was provided no process at all to dispute the Commission's determination that he was an absconder, the Commission violated Mr. Ashby's due process rights by arresting Mr. Ashby on a warrant premised directly on that determination.  *See Rolles v. Civil Serv. Comm'n*, 512 F.2d 1319, 1327 (D.C. Cir. 1975) (finding a due process violation where the petitioner was given "no process at all upon which valuable property interests can be lost").

The Parole Commission also violated Mr. Ashby's due process rights by failing to follow its own regulations.  "[P]rinciples of due process require an agency to follow its own regulations." *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988).  These principles are highly relevant in the parole context, where liberty is at stake.  *See generally Morrissey v. Brewer*, 408 U.S. 471 (1972). Claims that an "agency, such as the Parole Commission, fail[s] to follow its own regulations . . . fall under the procedural due process guarantees."  *Lee v. Rios*, 360 F. App'x 625, 629 (6th Cir. 2010).  For the reasons discussed above — because the Commission did not make the required finding that Mr. Ashby was an absconder, nor did they issue the warrant as soon as practicable — the Commission violated Mr. Ashby's due process rights.

D.  <u>Relief Under Section 2241 is Appropriate Where the Parole Commission Lacks Authority to Issue a Warrant.</u>

Where, as here, a petitioner demonstrates that "the Parole Commission lacked authority" to take action, the proper remedy is to grant the petitioner's *habeas corpus* petition.  The Court's decision in *Owens v. Gaines*, 219 F. Supp. 2d 94, is instructive.  In *Owens*, the petitioner claimed that the Parole Commission lacked statutory or regulatory authority to revoke his parole based on a supplemental warrant issued after the expiration of his sentence.  *Id.* at 95-96.  The Court analyzed the statutory and regulatory powers of the Parole Commission governing the supplementing of parole warrants, concluding that the Commission lacked "statutory or regulatory authority to indefinitely toll the expiration of a parolee's sentence."  *Id.* at 101.  The Court also concluded that the Commission "had no authority to issue the Supplemental Warrant" because the Commission impermissibly delayed the issuance of the warrant."  *Id.* at 103.  For those reasons, the Court granted the petition and ordered the Parole Commission to release the petitioner from supervision.  *Id.* at 104.

That same relief should apply here.  As Mr. Ashby has demonstrated, by issuing and executing the warrant for his arrest, the Parole Commission exceeded their statutory and regulatory authority, violated the APA, and denied Mr. Ashby the constitutional due process he is guaranteed.

For the foregoing reasons, Mr. Ashby requests that the Court order his release from jail, his termination of supervision, and order any other relief the Court deems proper.

Dated: March 18, 2019

Respectfully submitted,

/s/ Adam Thompson (D.C. Bar #1013140)

Adam Thompson
Staff Attorney
Public Defender Service for the District of Columbia

633 Indiana Avenue NW
Washington, DC 20004
Phone: 202-824-2474
Fax: 202-824-2525
Email: agthompson@pdsdc.org


/s/ Jonathan Anderson (D.C. Bar #475306)
Jonathan Anderson
Chief, Special Litigation Division
Public Defender Service for the District of Columbia
633 Indiana Avenue NW
Washington, DC 20004
Phone: 202-824-2740
Fax: 202-824-2525
Email: janderson@pdsdc.org


/s/ Steven Marcus*

Steven Marcus
Staff Attorney
Public Defender Service for the District of Columbia
633 Indiana Avenue NW
Washington, DC 20004
Phone: 202-824-2524
Fax: 202-824-2525
Email: smarcus@pdsdc.org


## **CERTIFICATION**

In accordance with D.D.C. Local Civil Rule 83.2(g), the attorney whose name is marked with an asterisk above certifies that: (i) he is a member in good standing of the New York bar; (ii) he is representing a petitioner who is indigent within the meaning of Local Rule 83.2(g), at no cost to petitioner; (iii) he has never been subject to disciplinary complaint or sanction by any court or other disciplinary authority; (iv) he possesses a copy of the Local Rules of this District and is familiar with the rules generally and as they pertain to this proceeding.

Dated: March 18, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the Respondents named in this action, each of whom is an electronic filer in the Court's CM/ECF system.

/s/ Adam Thompson (D.C. Bar #1013140)
Adam Thompson
Staff Attorney
Public Defender Service for the District of Columbia
633 Indiana Avenue NW
Washington, DC 20004
Phone: 202-824-2474
Fax: 202-824-2525
Email: agthompson@pdsdc.org